STATE OF CONNECTICUT *v.* IAN WRIGHT
(AC 23660)

Foti, Bishop and Hennessy, Js.

Argued March 19—officially released May 27, 2003

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

C. *Robert Satti, Jr.,* senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict,* state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Ian Wright, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a), as enhanced by General Statutes § 53-202k, and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35. On appeal, the defendant claims that the court's charge to the jury was defective and that the evidence was insufficient to sustain his conviction of murder. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 15, 2000, at approximately 11 p.m., Betty Robertson entered the Jamaican American and Puerto Rican Club (club) in Bridgeport to attend a party. Everyone, including the victim, Wilfredo Sanchez, was searched for weapons as they entered the club. Robertson noted, however, that the defendant and his brother, David Wright, were not searched when they entered the club. After Robertson and the victim entered a hallway near the rest rooms to "roll some marijuana," the defendant began flicking the hallway lights. When the victim asked the defendant to stop, a fight started between them.

During the fight, John Williamson was standing behind the defendant, but close to the rest room, while David Wright was standing at the end of the hallway, also to the rear of the defendant. Robertson stated that as the victim was getting the better of the fight, she heard gunshots, and saw the victim fall to the ground and Williamson fall into the women's rest room. After the gunshots, Robertson saw both the defendant and David Wright run past her, both with guns in their hands,

and, as they fled, she heard more gunshots from outside the club.

At trial, Williamson testified that while he was in the men's rest room, he heard the sound of people fighting and, as he departed the rest room, saw a fight. Subsequently, he heard two gunshots and fell into the women's rest room, having been shot in the leg. While he was lying on the floor, he heard another gunshot. During the shooting, he did not see either the defendant or his brother.

The state also called James Hamilton to testify concerning a conversation that he had had with the defendant while both were incarcerated after the evening in question. Hamilton, who had no involvement in the incident, testified that while he and the defendant were cell mates, the defendant told him that during the evening of the shooting, he had seen the victim by the rest room and had told the victim to stop selling drugs because it was his family's club. Hamilton claimed that the defendant told him that he had been in possession of a gun at the time and that when he and the victim began to fight, he drew his gun. Hamilton added that the defendant told him that as he and the victim had struggled for the gun, it discharged, after which the defendant had backed up and shot the victim. Hamilton also testified that the defendant indicated to him that both he and his brother had had weapons. The defendant stated that he had a .45 caliber gun and that his brother had a .38 caliber weapon, and that as he and his brother were leaving the club, they both fired their guns.

Shortly after the shooting at the club, Bridgeport police observed the defendant who, while driving his automobile near Bridgeport Hospital, drove past a stop sign. After the police pursued the defendant's car, both the defendant and his brother fled from the car and were apprehended after being chased by the police.

The police noted that the car windows had been damaged, likely the result of gunshots. In the course of the police chase, David Wright was seen discarding a gun that later was determined to be the murder weapon. The defendant was discovered, shirtless, lying in an alley hidden by brush. He was not found in possession of a weapon, nor was any other weapon found in his vicinity.

The defense called John Pettway, who testified that he was in the club after 10 p.m. on the evening in question, and that the victim had been searched upon entering the club and that no gun was discovered on him. Pettway indicated that there had been a fight between the victim and another man in the rest room hallway. During the fight, he heard the "shooter" tell the victim that this was his "people's club," that he saw the victim strike the shooter in the face and that he saw the "shooter" draw a gun.[1] Pettway testified that he first heard one gunshot and then several more as he started to leave the hallway. He saw the defendant and his brother leave the hallway, with the defendant waving a gun and telling the crowd to "back off." Pettway then saw Patrick Wright, the club's owner, lock the club doors.

From an autopsy, it was determined that the victim had died as a result of a bullet wound from a .38 caliber gun. That weapon later was determined to be the gun that David Wright had thrown from the defendant's car while being pursued by the police. Bullet casings from that same weapon were discovered in the defendant's car and outside the club. Williamson's gunshot wound was found to have been caused by a .45 caliber weapon. At the scene, the Bridgeport police also recovered a .45 caliber shell casing from the hallway and other .45

---

[1] It appears from the record that Pettway identified the defendant as the shooter.

casings outside the club, all from the same weapon. In addition to those casings, the police found other casings of various calibers outside the club. Results consistent with gunshot residue were found on the hands of the defendant and David Wright.

A fair reading of the transcript supports the defendant's claim that the prosecution's theory was that the defendant was either the shooter or an accessory to David Wright, who was the shooter. Although neither the defendant nor David Wright testified at trial, it may be inferred from defense counsel's questioning and argument that the defense strategy was to suggest that David Wright had shot the victim without the defendant's knowledge or participation. At the conclusion of the evidence, the jury found the defendant guilty of both charges. Upon being polled, the jury indicated its conclusion that the defendant had been an accessory in the victim's murder. This appeal followed the defendant's sentencing to a total effective term of thirty-five years incarceration. Additional facts will be set forth as necessary.

## I

We first assess the defendant's claims of instructional error. As to the murder count, he claims that because he was charged as an accessory to murder, he was entitled to an instruction that the jury must acquit him if the principal's use of force was justified under General Statutes § 53a-19. Second, as to the charge of carrying a pistol or revolver without a permit, he claims that he was entitled to an instruction on the doctrine of necessity. We discuss each claim in turn.

"Our standard of review for claims of instructional error is well established. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its

effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *D'Alesandro* v. *Clare*, 74 Conn. App. 177, 181–82, 812 A.2d 76 (2002).

## A

The following additional procedural facts are relevant to our discussion of the defendant's claim. Although the state initially charged the defendant as the shooter, there was evidence adduced at trial that David Wright had fired the weapon, which resulted in the victim's death. On that basis, at the conclusion of the evidence, the state requested, and the court gave, an instruction concerning the defendant's accessorial liability pursuant to General Statutes § 53a-8.

The defendant asserts that he was entitled to a reasonable use of physical force charge premised on his claim that in regard to the state's charge that he was criminally responsible as an accessory, there was sufficient evidence from which the jury could have concluded that the shooter held a reasonable belief that the defendant was in imminent danger of physical harm from the victim.[2] As to that alternative, because the

---

[2] From the record, it is clear that the court did give a self-defense charge regarding the state's claim that the defendant was, himself, the shooter and not an accessory. The defendant makes no claims of instructional error regarding that portion of the charge.

court charged the jury under the accessory statute, the defendant argues that he was entitled to a charge that if the shooter was justified in his use of deadly force, then the shooter's justification should be imputed to the defendant.

The defendant's theory in that regard is that his liability as an accessory could be only derivative and that if the shooter's discharge of the weapon was justified, he could not be found criminally liable for the victim's killing because, at most, he would be only an accessory to a justified shooting. In response, the state argues that there was insufficient evidence to warrant a charge based on a third party shooter's reasonable belief of the need to use physical force in defense of the defendant.[3]

General Statutes § 53a-19 (a) provides: "Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may

---

[3] The state claims, as well, that the provisions of General Statutes § 53a-19 relating to the justified use of force do not pertain to accessory liability under General Statutes § 53a-8. The state's argument is premised on the language of General Statutes § 53a-9, which provides in relevant part: "In any prosecution for an offense in which the criminal liability of the defendant is based upon the conduct of another person under section 53a-8 it shall not be a defense that: (1) Such other person is not guilty of the offense in question because of lack of criminal responsibility or legal capacity or awareness of the criminal nature of the conduct in question or of the defendant's criminal purpose or because of other factors precluding the mental state required for the commission of the offense in question . . . ."

Because we find the absence of any evidence to warrant the requested charge dispositive of the defendant's claim, we leave to another day whether the provisions of § 53a-9 would prevent the court from correctly giving a justification charge when a defendant is charged as an accessory to one whose behavior would entitle the actor to a justification charge pursuant to § 53a-19.

not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

"A defendant who asserts a recognized legal defense, the availability of which is supported by the evidence, is entitled as a matter of law to a theory of defense instruction." (Internal quotation marks omitted.) *State* v. *Holmes*, 75 Conn. App. 721, 727, 817 A.2d 689 (2003). "Before an instruction is warranted, however, [a] defendant bears the initial burden of producing sufficient evidence to inject self-defense into the case. . . . To meet that burden, the evidence adduced at trial, whether by the state or the defense, must be sufficient to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense." (Citation omitted; internal quotation marks omitted.) *State* v. *Lewis*, 220 Conn. 602, 619, 600 A.2d 1330 (1991). The jury's inquiry into the defendant's belief regarding the necessary degree of force to repel the victim's attack is commonly known as the subjective-objective inquiry and it involves a two-step process.

"First, the jury must determine whether, on the basis of all of the evidence presented, the defendant in fact had believed that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . .

"If the jury determines that the defendant had not believed that he had needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail. If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to whether *that belief* was reasonable, from the perspective of a reasonable person in the defendant's circum-

stances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 90, 815 A.2d 678, cert. denied, 263 Conn. 905, 819 A.2d 840 (2003). Before the jury is given an instruction on self-defense, however, there must be some evidentiary foundation for it. "A jury instruction on self-defense is not available to a defendant merely for the asking. The defendant would only have been entitled to a jury instruction on his theory of self-defense if he had presented applicable evidence no matter how weak or incredible . . . . However low the evidentiary standard may be, it is nonetheless a threshold the defendant must cross. The defendant may not ask the court to boost him over the sill upon speculation and conjecture." (Citation omitted; internal quotation marks omitted.) *State* v. *Tyson*, 23 Conn. App. 28, 37–38, 579 A.2d 1083, cert. denied, 216 Conn. 829, 582 A.2d 207 (1990).

In support of his claim, the defendant asserts that from witness testimony, the jury could have concluded that David Wright saw that he and the victim were fighting, and that there was a struggle for a weapon with which the victim might shoot the defendant or that the victim might injure the defendant with his fists if David Wright did not intervene in defense of the defendant. The evidence regarding David Wright, however, does not support the defendant's supposition as to David Wright's state of mind. Witnesses testified that David Wright was in the hallway during the fight between the defendant and the victim. Testimony revealed that at one point, he drew a gun and shot the victim, and that shortly thereafter, he and the defendant, both armed, ran from the building.

In the absence of any evidence concerning David Wright's state of mind, the suggestion that the jury should have been asked to ponder a third party shooter's beliefs would have been no more than judicial invitation to jury speculation. We conclude that the court

properly decided not to instruct the jury on the defense of necessity regarding the conduct of a third party shooter.

## B

The defendant next claims that the court improperly declined to instruct the jury on the defense of necessity concerning the charge of carrying a pistol or revolver without a permit. In support of his claim, the defendant asserts that the evidence, when viewed favorably to him, demonstrates that the victim and the defendant had struggled over a gun, that no one saw the defendant draw the gun, that the gun accidentally discharged, wounding Williamson, and that David Wright then shot the victim. On that basis, the defendant asserts that the court should have instructed the jury that it could consider a defense of necessity to the charge of carrying a pistol or revolver without a permit. More specifically, the jury could consider the latter defense if it found that during the fight, the defendant was placed in imminent danger of death when the victim took a gun from him, thereby entitling the defendant momentarily to take possession of the weapon for his own protection.

In response, the state claims that necessity is not a legally recognized defense to the charge of carrying a pistol or revolver without a permit and that if it were, the evidence, even when construed favorably to the defendant, does not support the giving of such an instruction.[4] Because we agree with the state's evidentiary argument, we need not reach its legal claim.

---

[4] As the state points out in its brief, although the defense of necessity has no statutory basis in Connecticut, and it survives as a common-law defense to certain charges, it never has been applied to the charge of carrying a pistol or revolver without a permit. It is difficult to envision the propriety of the defense of necessity when the defendant was in possession of a gun at the bar before the fight with the victim, he had drawn a gun on the victim during the fight and there was an absence of any evidence that the victim had been in possession of a weapon beforehand.

Our review of the record reveals that there was no evidence that the victim was in possession of a weapon before the fight. Correspondingly, there was evidence that the defendant had not been searched upon entering the club, and that he had been in possession of a weapon before, during and after the fight and shooting. On the basis of that evidentiary record, there was no reason for the court to instruct the jury on the defense of necessity to the charge of carrying a pistol or revolver without a permit.

## II

The defendant's last claim is that the evidence was insufficient as a matter of law for the jury to have convicted him of murder as an accessory. In support of his claim, he argues that the evidence regarding David Wright as the shooter demonstrates that David Wright shot the victim without any encouragement or aid from the defendant and without the defendant's prior knowledge.

"In reviewing [a] sufficiency [of evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty. . . . As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained."

(Internal quotation marks omitted.) *State* v. *Pranckus*, supra, 75 Conn. App. 85–86.

General Statutes § 53a-8 (a) provides that "[a] person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." This court has stated: "[T]here is no such crime as being an accessory . . . . The accessory statute merely provides alternate means by which a substantive crime may be committed. . . . This state . . . long ago adopted the rule that there is no practical significance in being labeled an accessory or a principal for the purpose of determining criminal responsibility. . . . The modern approach is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . . [The] labels [of accessory and principal] are hollow. . . .

"Since under our law both principals and accessories are treated as principals . . . if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [crime] charged or did some act which forms . . . a part thereof, or directly or indirectly counseled or procured any persons to commit the offenses or do any act forming a part thereof, then the convictions must stand. . . . To prove guilt as a principal, the state must prove each element of the offense charged beyond a reasonable doubt. To be guilty as an accessory one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it. . . . Whether

a person who is present at the commission of a crime aids or abets its commission depends on the circumstances surrounding his presence there and his conduct while there." (Citations omitted; internal quotation marks omitted.) *State* v. *Ashe*, 74 Conn. App. 511, 516–17, 812 A.2d 194, cert. denied, 262 Conn. 949, 817 A.2d 108 (2003).

With those parameters in mind, we review the evidence to determine whether the jury reasonably could have found the defendant guilty of murder as an accessory. As to the elements of intent and concert required for a murder conviction as an accessory, the jury reasonably could have considered the defendant and David Wright's possession of weapons at the club, their presence in the hallway prior to the fight, the defendant's behavior toward the victim before the fight, the defendant's and David Wright's firing of weapons during the fight and their flight together following the shooting in a vehicle driven by the defendant while David Wright remained in possession of the murder weapon. We conclude that there was ample evidence to support the jury's finding that the defendant was guilty of murder as an accessory.

The judgment is affirmed.

In this opinion the other judges concurred.