******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANGEL MORALES
(AC 37867)

Beach, Mullins and Bear, Js.*

*Argued November 29, 2016—officially released April 18, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Dewey, J.)

*Daniel P. Scholfield*, with whom, on the brief, was
*Hugh F. Keefe*, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, and *Robin Krawczyk*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Angel Morales, appeals from the judgment of conviction, rendered after a jury trial, of intentional manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1) (criminal possession). On appeal, the defendant claims that the trial court erred (1) by denying his motion to bifurcate the elements of criminal possession or to sever the murder charges brought against him from the criminal possession charge; (2) in instructing the jury on combat by agreement; and (3) in refusing to instruct the jury on the common-law defense of necessity. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of August 29, 2013, the defendant drove with his friend, Christopher Spear, and two female companions to a nightclub in downtown Hartford known as "Up or On the Rocks." The defendant parked his car in a nearby parking lot located in the area of High Street and Church Street. Also at the club that night were the victim, Miguel Delgado, his brother, Jose Delgado,[1] and a friend, Steven Castano, all of whom had arrived by taxi. While on the second floor of the club and with the defendant present, Delgado and Spear bumped into each other; Spear spilled his drink on Delgado. An argument ensued, during which Spear made a racially charged threat to shoot someone. Returning from the bar, Castano found the two men arguing and tried to separate them. Spear, however, slapped the drink Castano was holding at him, the victim, and Delgado. At that point, the club's security escorted Spear, the defendant, and their companions out of the club while detaining the victim, Delgado, and Castano inside the club in an effort to defuse the situation and prevent violence.

Club security held the victim and Delgado in the club for about ten minutes. When they left, Delgado and Spear renewed their argument outside of the nightclub where the defendant had been waiting with Spear. With the defendant present, Spear again threatened to shoot someone. Although their friends, but not the defendant, attempted to defuse the altercation, Delgado and Spear agreed to engage in a fistfight, and the parties proceeded to the parking lot where the defendant had parked his car.

When the men reached the parking lot, Spear struck Delgado on the head with a hard object injuring him. When Spear attempted to retrieve the object, which had fallen to the ground, Delgado punched him, rendering him unconscious. Despite the fact that Spear was unconscious on the ground, Delgado continued to beat Spear, causing him significant injuries to his head

and face.

Meanwhile, the defendant recognized that the object with which Spear struck Delgado was a gun. The defendant went to pick it up, but the victim, who was behind him, engaged the defendant and the two men struggled with each other on the ground. In the course of the ensuing struggle, the defendant obtained the gun. As the victim stood up, he struck the defendant in the face and the defendant fired a single shot, which struck the victim in the chest.

The victim ran toward Allyn Street where he collapsed on the sidewalk. Despite intervention by Delgado, a passerby who administered cardiopulmonary resuscitation, and medical personnel, the victim later died at the hospital at 2:15 a.m. of a gunshot wound to his chest.

After shooting the victim, the defendant fled. He discarded the gun in a garbage receptacle. He then drove away, leaving behind Spear and the women who had accompanied them.

On October 29, 2014, in a single long form information, the state charged the defendant with murder in violation of General Statutes (Rev. to 2013) § 53a-54a and reckless manslaughter in the first degree with a firearm in violation of § 53a-55a (a) (murder charges), as well as criminal possession. At trial, the defendant stipulated that he shot the victim, but he testified both that the gun accidently discharged and that he was acting in self-defense. The jury returned a verdict of not guilty on the murder charge, but it found him guilty of the lesser included offense of intentional manslaughter in the first degree with a firearm. Additionally, the jury found the defendant guilty of reckless manslaughter in the first degree with a firearm, and criminal possession. The court accepted the jury's verdict but a month later vacated the guilty verdict on the reckless manslaughter charge because of double jeopardy concerns. The court then sentenced the defendant to thirty-five years incarceration, suspended after twenty years, with five years probation on the intentional manslaughter conviction, and five years incarceration and a fine of $5000 for the criminal possession conviction. The court ordered that the sentences be served concurrently for a total effective sentence of thirty-five years incarceration, suspended after twenty years, with five years probation, and a $5000 fine. This appeal followed. Further facts will be set forth as necessary to the resolution of this appeal.

I

The defendant contends on appeal that the court abused its discretion when it denied his motion to either bifurcate or sever the charges against him. Specifically, he argues that he was prejudiced by having to defend simultaneously the murder charges and the criminal

possession charge. He claims prejudice because, in order to prove criminal possession, the state had to present evidence that he previously had been convicted of a felony. We disagree.

The following additional facts and procedural history are necessary for the resolution of this claim. On the first day of evidence and after the jury had been selected, the defendant moved to bifurcate or sever the charges against him. He proposed two alternative remedies. First, he asked that the court bifurcate the proof of the elements of criminal possession, submitting to the jury in the first part of the trial only the element of possession. Then, if the jury found that the element of possession was proven, he would stipulate to having been previously convicted of a felony. Alternatively, he asked the court to sever[2] the criminal possession charge from the murder charges, and to hold consecutive trials using the same jury. Conceding that the charges were logically connected, the defendant argued that proof of the convicted felon element of criminal possession would be unduly prejudicial if he *did not* testify on his own behalf in this case,[3] as was his right. Based on the state's assertion that it would agree to stipulate to the prior felony conviction without naming the conviction or underlying conduct, the court determined that, with a limiting instruction, any prejudicial impact of trying the charges together would be circumscribed, and, accordingly, it denied the motion.

A

The defendant first sought to bifurcate the elements of criminal possession. Section 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of a felony . . . ." As this court has previously stated: "No useful purpose would be served by a separate information alleging only the prior conviction. . . . [A]n information alleging only that a defendant possessed a handgun, without mention of his prior conviction, would fail to allege any cognizable offense under our penal code." *State* v. *Banta*, 15 Conn. App. 161, 173, 544 A.2d 1226, cert. denied, 209 Conn. 815, 550 A.2d 1086 (1988). Accordingly, the court did not abuse its discretion when it denied the defendant's motion to bifurcate the elements of criminal possession.

B

In the alternative, the defendant sought to sever the criminal possession charge from the murder charges. Before analyzing the defendant's claim, we set forth the applicable law and standard of review. "A judicial authority may order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together. . . . A judicial authority may also order separate trials if it

appears that a defendant is prejudiced by joinder. . . . This does not mean that severance is to be had for the asking. . . . The question of severance lies within the discretion of the trial court. We will not disturb the trial court's conclusion on the issue absent a clear abuse of discretion. The discretion to sever a trial should be exercised only if a joint trial will substantially prejudice the defendant. Substantial prejudice is more than disadvantage and the formidable task of demonstrating an abuse of discretion and that a joint trial resulted in substantial prejudice falls to the defendant. . . . Simply put, the test to be applied is whether substantial injustice will result if the charges are tried together." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 234 Conn. 324, 343, 662 A.2d 1199 (1995).

In determining whether a refusal to order separate trials was an abuse of discretion when one of the charges involves proof of the prior commission of a felony, this court considers the five factors enunciated in *State* v. *Banta*, supra, 15 Conn. App. 170–71:[4] "[1] the manner in which the evidence entered the case and the extent of the jury's knowledge of the facts underlying the prior felony conviction . . . [2] the adequacy of any cautionary instructions given by the court . . . [3] the use of the prior felony evidence by the prosecution in argument to the jury . . . [4] the likelihood that the prior felony conviction evidence will inflame the passions of the jurors in light of the nature of the offenses charged . . . and [5] the strength of the evidence against the defendant."[5] (Citations omitted.)

The first factor requires consideration of the manner in which the evidence entered the case and the amount of detail that the jury received regarding the prior felony conviction. The jury first learned of the defendant's prior felony conviction at the close of the state's case-in-chief by way of a stipulation that stated only that the defendant had "previously been convicted of a felony." Additionally, the defendant admitted during his testimony that he was convicted of felonies in 2008 and 2013. The jury did not hear any details of the defendant's prior convictions. This factor does not favor him.

The second factor addresses the adequacy of the cautionary instructions given by the court. After the stipulation was read to the jury, the court immediately instructed the jury that it was free to accept or reject the stipulation and that it was not to speculate as to the nature of the felony.[6] In its final instructions to the jury,[7] the court informed the jury that it must consider separately each of the charges. The court directed the jury to consider the stipulation to a prior conviction as evidence to satisfy an element of criminal possession. Additionally, the court instructed that the jury must accept the stipulation as fact but the stipulation did not establish proof of an element of the crime beyond a reasonable doubt. The court instructed the jury, how-

ever, that it was not to consider the defendant's prior felony convictions as an indication of his guilt with respect to the other crimes charged, but only as it related to his credibility with respect to his testimony concerning each of those crimes. The court also advised the jury that the stipulation was "to be used only for the specific purpose it was entered for and not to be used for any other purpose."

The defendant argues that both the court's instruction to the jury immediately after the stipulation was read and its final charge to the jury were inadequate. Specifically, he contends that the court failed to provide a sufficient contemporaneous limiting instruction when the stipulation was read to the jury and that the court failed to caution at any point that the stipulation could not be considered to prove any violent propensities. A trial court generally is not obliged to give a limiting instruction sua sponte; *State* v. *Crenshaw*, 313 Conn. 69, 90 n.16, 95 A.3d 1113 (2014); and, a fortiori, nor is it required to give a contemporaneous limiting instruction. *State* v. *Willoughby*, 153 Conn. App. 611, 618, 102 A.3d 1118 (2014) (court not required to give contemporaneous limiting instruction on admissible hearsay statement); see also *William C.* v. *Commissioner of Correction*, 126 Conn. App. 185, 190, 10 A.3d 115 (court not required to give contemporaneous limiting instruction on constancy of accusation testimony), cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011).

The defendant did not request any contemporaneous limiting instruction. The court gave a limiting instruction during the charge to the jury on the use of the prior felony evidence. Although the instruction did not address the use of the evidence for violent propensities, there was no evidence to suggest that either of the defendant's felony convictions was for a crime of violence, and the court specifically instructed the jury not to speculate as to the nature of the offense. In the absence of evidence to the contrary, we presume that the jury followed the trial court's instructions. *State* v. *Jamison*, 320 Conn. 589, 607, 610, 134 A.3d 560 (2016). Therefore, we conclude that the court's instructions did not mislead the jury and, thus, the second factor does not favor the defendant.

The third factor requires this court to consider the use of the prior felony evidence by the prosecution in argument to the jury. In her closing arguments with respect to criminal possession, the prosecutor stated, "And there's a stipulation in evidence that he has previously been convicted of a felony and on the stand he indicated that he had been. That count should be guilty as well." It is unlikely that such a brief comment that merely summarized the relevant evidence, and was presented without embellishment, would substantially prejudice the defendant and, therefore, this factor does not favor him.

The fourth factor considers the likelihood that the prior felony conviction evidence will inflame the passions of the jurors in light of the nature of the offenses charged. As stated, the jurors learned nothing of the nature of the felony convictions. "Although the stipulation may have been disadvantageous to the defendant, it was an element that necessarily had to be proven under § 53a-217." *State* v. *Thompson*, 81 Conn. App. 264, 287, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004). This factor does not favor the defendant.

The fifth factor is the strength of the evidence against the defendant. The jury was presented with evidence that the defendant was present during the entire course of events, including both inside and outside the club, and during the subsequent altercation between Spear and Delgado in the parking lot. Rather than leave at any time, he stayed throughout with his friend Spear, even though Spear had threatened to shoot people at least twice that evening. During the altercation in the parking lot, the defendant saw the gun after it had fallen to the ground, ran toward it rather than away from it, struggled for it, and shot the victim with it. He stipulated and testified that he shot the victim.

The matter for the jury to decide was whether the defendant possessed the requisite mental state—the necessary specific intent—to be convicted of murder or manslaughter, or whether the killing was justified as self-defense. The jury returned a verdict of not guilty on the murder charge but guilty of the lesser included offense of intentional manslaughter in the first degree with a firearm in violation of § 53a-55a (a). Although the defendant claimed that he acted in self-defense, he also repeatedly testified that the shooting was an accident. He thus testified inconsistently about his state of mind that evening and his description of the events leading up to and including the shooting. Accordingly, there was direct evidence in the form of the defendant's admission and acknowledgement that he shot the victim. His testimony was equivocal and, therefore, sufficient for the jury to decide his mental state. The fifth factor does not weigh in favor of the defendant.

Applying the five *Banta* factors to this case, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to sever the charges against him.

## II

The defendant claims that the court improperly instructed the jury. First, he claims that the court erred when it gave a combat by agreement instruction because, he argues, there was a complete lack of evidence of such an agreement. Second, he claims that the court erred when it denied his request to charge the jury on the defense of necessity as to the criminal

possession charge.

Before addressing the defendant's claims, we set forth the well established standard of review for claims of instructional error. "An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Clark*, 264 Conn. 723, 729, 826 A.2d 128 (2003). "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 452–53, 988 A.2d 167 (2009).

A

In the present case, the defendant claims that the court erred when it gave a combat by agreement instruction because there was a complete lack of evidence of such an agreement. He does not challenge the substance of the court's instructions. We conclude that the court's instruction did not mislead the jury.

"The trial court should not submit to the jury any issue that is foreign to the facts in evidence or for which no evidence was offered. . . . In reviewing a claim that there was insufficient evidence to support an instruction, the reviewing court must consider the evidence in the light most favorable to upholding the instruction. . . . The question on appeal is whether, viewing the evidence in this light, it was sufficient to support a reasonable inference that the physical force employed by the defendant was the product of an agreement not authorized by law." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson*, 53 Conn. App. 476, 480–81, 733 A.2d 852, cert. denied, 249 Conn. 929, 733 A.2d 849 (1999).

Although an individual may justifiably use deadly physical force in self-defense under General Statutes § 53a-19,[8] certain exceptions under that section preclude the defense. Subsection (c) of § 53a-19 provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in

using physical force when . . . (3) the physical force involved was the product of a combat by agreement not specifically authorized by law." "A jury instruction regarding the combat by agreement exception to self-defense is warranted when the evidence is sufficient to support a reasonable inference that such a mutual combat occurred. . . . The agreement required by . . . § 53a-19 (c) (3) need not be formal or express. . . . Such an agreement may be tacit and inferred from the facts and circumstances of the case." (Citations omitted; internal quotation marks omitted.) *State* v. *O'Bryan*, 318 Conn. 621, 637, 123 A.3d 398 (2015).

We have reviewed the evidence presented at trial and conclude that there was sufficient evidence to warrant the court's instruction. The court reasonably could have determined that there was sufficient evidence, if believed, from which the jury could have found that the defendant entered into a tacit or informal agreement to engage in unlawful combat. For example, the defendant was present for the entirety of each altercation between Spear and Delgado, including when Spear threatened to shoot people at least twice. The club's security team found it necessary to separate the groups in an attempt to defuse the situation and prevent violence. Once escorted out of the club, instead of leaving the area, the defendant and Spear waited for the victim and his friends. The defendant then accompanied Spear to the parking lot after Spear and Delgado had explicitly agreed to a fistfight. After Spear struck Delgado with a hard object, which then dropped on the ground, the defendant was the first to run toward what he had identified as a gun. There is no evidence that at any time the defendant left the area of the agreed and ongoing altercation, telephoned the police, attempted to convince Spear to leave, telephoned for medical help for Spear, or attempted to defuse the situation.

In summary, reviewing the evidence as a whole, the court reasonably could have determined that there was sufficient evidence of a tacit or informal agreement among at least some of those present, including the defendant, growing out of and related to the agreement between Spear and Delgado. Accordingly, the court had the discretion to submit to the jury the question of whether the combat by agreement exception to the defendant's claim of self-defense had been proved by the state, assuming that the jury found prior to considering that exception that the defendant was acting in self-defense.[9] Accordingly, we conclude that the court properly exercised its discretion to charge the jury on the combat by agreement exception to the defendant's claim of self-defense.[10]

B

The defendant also claims that the court erred when it denied his request to present a necessity instruction to the jury as to the criminal possession charge. In

response, the state contends that the court properly refused to instruct the jury on necessity because the evidence did not support the instruction. We agree with the state.

The following additional procedural history is relevant to the resolution of this claim. On November 17, 2014, the day that trial began, the defendant filed a request to charge the jury on necessity concerning the criminal possession charge. After the prosecution and defense rested their cases, the court heard argument on the necessity charge on November 19, 2014. The defendant argued that the evidence clearly supported the charge, utilizing the three factors set forth in *State* v. *Wright*, 106 Conn. App. 295, 305, 942 A.2d 430, cert. denied, 286 Conn. 921, 949 A.2d 482 (2008), and *State* v. *Marsala*, 59 Conn. App. 135, 142, 755 A.2d 965, cert. denied, 254 Conn. 948, 762 A.2d 905 (2000). The state objected, citing *State* v. *Wright*, 77 Conn. App. 80, 822 A.2d 940, cert. denied, 266 Conn. 913, 833 A.2d 466 (2003). The court took the arguments under advisement as it prepared its instructions. At the charge conference the next day, the defendant renewed his request for an instruction on necessity, arguing that the evidence supported that defense, and the state again objected. The court stated that it did not think that the case law supported a necessity charge.[11] The court concluded that it would not give the instruction but noted the defendant's objection. The court did not instruct the jury on the defense of necessity and, after the charge had been given, the defendant took exception to the court's failure to charge.

In reviewing a claim that the court failed to give a requested charge, our standard of review is well settled. "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect [on] the jury in guiding [it] to a correct verdict in the case. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . In reviewing the trial court's failure to charge as requested, we must adopt the version of facts most favorable to the defendant [that] the evidence would reasonably support. . . . A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Citations omitted; internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn.

734, 745–46, 974 A.2d 679 (2009).

As to his claim of necessity, "[t]he defendant is required to make a preliminary showing through an offer of proof before the necessity defense may be submitted to the jury. . . . Therefore, as a threshold question of law, the trial court must determine whether a necessity defense is warranted under the facts presented by the defendant. . . . If the court determines that there is sufficient evidence available to support the defense of necessity, then a defendant is entitled as a matter of law to a defense of necessity instruction." (Citations omitted.) *State* v. *Woods*, 23 Conn. App. 615, 617–18, 583 A.2d 639 (1990).

"Our statutory definition of the defense of justification, General Statutes §§ 53a-16 and 53a-17, does not include 'necessity' as a recognized defense to a criminal charge. Indeed, our Supreme Court has indicated that the defense of necessity has no statutory basis in Connecticut. . . . At common law, the defense of necessity has been recognized under certain narrowly defined circumstances. . . . The defense rests upon the proposition that there may be circumstances where the value protected by the law is, as a matter of public policy, eclipsed by a super[s]eding value which makes it inappropriate and unjust to apply the usual criminal rule. . . . The defense of necessity traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils. . . . The defense, however, deals with obvious and generally recognized harms, not with those which are debatable and, indeed, the subject of legislation and government regulation." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Drummy*, 18 Conn. App. 303, 308–309, 557 A.2d 574 (1989); see also *State* v. *Joseph*, 161 Conn. App. 850, 852–53 n.3, 129 A.3d 183 (2015), cert. denied, 320 Conn. 923, 133 A.3d 878 (2016).

"Where an offer of proof is made with respect to a defense and it is clear from the offer of proof that the defense is insufficient as a matter of law, the trial court may properly refuse to permit evidence of the defense to be submitted to the jury. . . . This court has . . . adopted a definition of the common law defense of necessity that requires a showing by the defendant (a) that there [was] no . . . legal alternative available, (b) that the harm to be prevented [was] imminent, and (c) that a direct causal relationship [may] be reasonably anticipated to exist between defendant's action and the avoidance of harm." (Citation omitted; internal quotation marks omitted.) *State* v. *Marsala*, supra, 59 Conn. App. 142.

In the present case, the elements of the defendant's necessity defense as to the criminal possession charge are similar to his self-defense arguments as to the other charges relating to his use of the gun. On appeal, he

argues, on the basis of his own testimony at trial, that he saw the gun fall to the ground but that he did not know from where it came. He also argues on appeal that he testified that he attempted to obtain control of the gun because the victim was attempting to do the same thing. The defendant, however, testified at trial that he was the first to attempt to pick up the gun and that the victim attacked him from behind. At no point did the defendant testify that he ran to pick up the gun because the victim was attempting to do so.

Although the defendant attempts to meld the grounds for his necessity affirmative defense as to the criminal possession charge with his self-defense claims as to the murder charges, we examine his necessity claims from the initial time that the opportunity to possess or control the gun presented itself. In considering the defendant's request for a necessity charge, the court reasonably could have determined from the evidence that it and the jury had heard, that when the gun fell to the ground and the defendant noticed it, he had lawful options available to him other than running toward it to pick it up. As the state argued at trial, he could have run away from the gun and left the area of the altercation. Additionally, if his concern was the protection of others, he could have shouted a warning that there was a gun present so they also could have fled the area. He also could have shouted for the police or for other help, run back to the nightclub, or placed a 911 call. Each of these is a lawful alternative to his decision to obtain possession of the gun.[12] Accordingly, because he failed to present evidence to satisfy the first prong of the defense of necessity, the court reasonably determined that the defendant was not entitled to an instruction on that defense.

Contrary to the defendant's contention, the trial court did not abuse its discretion in denying his motion to bifurcate or sever, nor did the court err in instructing the jury.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Although Miguel Delgado and Jose Delgado share a surname, herein we refer to Miguel Delgado as the victim and to Jose Delgado by his surname.

[2] The defendant inartfully presents both of his alternatives as bifurcations. "The term 'bifurcation' normally is used where one case is split into multiple parts. For example, a jury deliberates on liability and, after determining that liability exists, subsequently determines damages. Here, two separate cases were joined for trial, gun charges and narcotics charges, and severance is the appropriate term." *State* v. *Fleury*, 135 Conn. App. 720, 734 n.3, 42 A.3d 499 (*Flynn, J.*, concurring), cert. denied, 305 Conn. 919, 47 A.3d 388 (2012). Therefore, when the defendant in the present case seeks to separate his criminal possession charge from his murder charge, he seeks a severance.

[3] The defendant ultimately did testify in his trial.

[4] The defendant argues that, in analyzing the prejudicial effect of severance utilizing the *Banta* factors, the court must view the potential prejudice through the lens of *State* v. *Jones*, supra, 234 Conn. 324. We have considered *Jones* and find that the defendant's reliance upon it is misplaced.

[5] The *Banta* court added, "Another factor which, of course, must be

considered in the appropriate case is the effect of the joinder upon a defendant's right to testify or not to testify." *State* v. *Banta*, supra, 15 Conn. App. 171 n.3. We need not consider that factor in the present case, however, because the defendant has not claimed on appeal that the court violated his constitutional rights to testify or not testify by the failure to sever the murder charges from the criminal possession charge.

[6] The court instructed the jury as follows: "You'll have copies of the stipulations with you during your deliberations. There are rules concerning the stipulation. You'll receive those when I give the instructions. But those you can determine, accept or reject as you consider it relevant.

"Now, as far as the convicted of a felony, don't speculate as to what it could be. Many, many offenses are felonies in the state of Connecticut. So I'm asking you not to speculate as to what it could or couldn't have been."

[7] When instructing the jury regarding the defendant's prior felony convictions and the stipulations entered, the court instructed as follows:

"In this case evidence was introduced to show that the defendant was convicted of a felony, which is any crime for which a person may be incarcerated for more than one year. Evidence of the commission of a crime other than the one charged generally is not admissible to prove the guilt of the defendant. In this particular case, the commission of other crimes by this defendant has been admitted into evidence for the purpose of affecting his credibility. You must weigh the testimony along with all the other evidence in this case. You may consider the convictions of the defendant only as they bear on his credibility, and you should determine that credibility upon the same considerations as those given to any other witness.

"With respect to count three, [criminal possession] evidence of the commission of a felony can be considered by you during your deliberations concerning the elements of that crime.

\* \* \*

"You will recall that I have ruled some testimony and evidence have been allowed for a limited purpose. Any testimony or evidence which I identify as being limited to a purpose, you will consider only as it relates to the limit for which it was allowed, and you shall not consider it—you shall not consider such testimony and evidence in finding any other facts as to any other issue.

"In this case, evidence in the form of a stipulation between the parties was introduced to show that the defendant was convicted of a felony and further that the defendant was the shooter on the evening in question. A stipulation is an agreement between the parties concerning some fact, which you as the jury are bound to accept as fact during your deliberations. A stipulation does not, however, establish proof of the element of the crime beyond a reasonable doubt. The stipulation is to be used only for the specific purpose it was entered for and not to be used for any other purpose. The stipulation does not include credibility or the weight you give to the exhibit."

[8] General Statutes § 53a-19 provides in relevant part: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm. . . .

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when . . . (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

[9] If the jury found that the state had proved beyond a reasonable doubt that the defendant was not acting in self-defense, then the jury would not have had to reach, consider, and decide whether the combat by agreement exception negated the defendant's self-defense claim. See *State* v. *O'Bryan*, supra, 318 Conn. 631, 637.

[10] The defendant also argues on appeal that it was improper for the court to consider the combat by agreement instruction without a request by the state or the defendant, and to determine that the jury should decide whether the evidence supported a finding that the defendant, Spear, and Delgado, among others, had entered into an express or tacit agreement to fight prior to gathering in the parking lot. We disagree. "[W]e must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Strong*, 122 Conn. App. 131, 140, 999 A.2d 765, cert. denied, 298 Conn. 907, 3 A.3d 73 (2010); see also *State* v. *Riddick*, 153 Conn. App.

69, 78, 100 A.2d 438 ("the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict" [internal quotation marks omitted]), cert. denied, 315 Conn. 904, 104 A.3d 757 (2014). The statute under which the defendant raises his self-defense claim, § 53a-19, includes combat by agreement as an enumerated exception. Given that it is the duty of the court to instruct the jury on the law, adapted to the facts of the case, and because we conclude that sufficient facts supported a combat by agreement instruction, we conclude that the court did not abuse its discretion by including that instruction in its draft instructions provided to counsel, and subsequently to the jury. See *Perez* v. *Cumba*, 138 Conn. App. 351, 378, 51 A.3d 1156 ("[i]t thus was incumbent on the court to provide the jury with instructions adapted to [the issues presented]"), cert. denied, 307 Conn. 935, 56 A.3d 712 (2012).

[11] On appeal, the defendant argues that the court erred in determining that the instruction was unwarranted because it believed that instruction was prohibited merely because there was no authority requiring it. We cannot agree that the court erred in concluding that it could not give the instruction because no law required it; the court made no such conclusion. See *Johnson* v. *de Toledo*, 61 Conn. App. 156, 162, 763 A.2d 28 (2000) ("It is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted incorrectly. . . . Rather, we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly, including considering the applicable legal principles." [Internal quotation marks omitted.]), appeal dismissed, 258 Conn. 732, 785 A.2d 192 (2001).

[12] We also note that other jurisdictions have added factors to the defense of necessity in the context of unlawful possession that make the defense unavailable when the defendant recklessly or negligently placed himself in circumstances in which it was probable that he would be forced to choose the criminal conduct. See, e.g., *United States* v. *Ridner*, 512 F.3d 846, 850 (6th Cir. 2008) ("emphasiz[ing] that the keystone of the analysis is that the defendant must have no alternative—either before or during the event—to avoid violating the law" [internal quotation marks omitted]); see also *United States* v. *Gant*, 691 F.2d 1159, 1162–63 (5th Cir. 1982); *State* v. *Crawford*, 308 Md. 683, 699, 521 A.2d 1193 (1987).

---