### STATE OF CONNECTICUT *v.* THOMAS HALL
### (13702)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued November 8, 1989—decision released January 30, 1990

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Dennis O'Connor,* assistant state's attorney, for the appellant (state).

*Sydney T. Schulman,* with whom, on the brief, was *Otto Witt,* for the appellee (defendant).

HULL, J. The defendant, Thomas Hall, was charged with murder; General Statutes § 53a-54a;[1] in connection with the shooting of James "Bro" Robinson. Following a jury trial, he was convicted of the lesser included offense of manslaughter in the first degree, in violation of General Statutes § 53a-55 (a) (1),[2] and

---

[1] General Statutes § 53a-54a provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree

was sentenced to a term of imprisonment of not less than ten nor more than twenty years. On the defendant's appeal from the judgment of conviction, the Appellate Court determined that the trial court had committed reversible error in two respects: (1) in refusing to instruct the jury that the defense of self-defense was applicable to the lesser included offense of manslaughter in the second degree; and (2) in refusing to instruct the jury on the lesser included offense of criminally negligent homicide. *State* v. *Hall,* 17 Conn. App. 502, 554 A.2d 746 (1989). The state, after this court had granted certification,[3] appealed from the Appellate Court's judgment reversing the judgment of the trial court. We conclude that the trial court did err in refusing to instruct the jury that the defense of self-defense was applicable to the lesser included offense of manslaughter in the second degree, but we determine that this error was harmless in nature. We also conclude that the trial court did not err in refusing to instruct the jury on the lesser included offense of criminally negligent homicide. Accordingly, we reverse the judgment of the Appellate Court and remand the case to that court with direction to reinstate the judgment of the trial court.

---

when: (1) With intent to cause serious physical injury to another person, he causes the death of such person . . . ."

[3] This court certified the following questions for review from the Appellate Court: (1) "Did the Appellate Court err in concluding that the trial court should not have instructed the jury that self-defense was not available as a defense to the lesser included offense of manslaughter in the second degree?"; (2) "Did the Appellate Court err in concluding that the determination of the jury that self-defense had been disproved beyond a reasonable doubt, implicit in its verdict that the defendant was guilty of manslaughter in the first degree, did not render harmless the failure to charge upon the availability of self-defense for manslaughter in the second degree?"; and (3) "Where the defendant admitted shooting the victim at close range six times, claiming self-defense, did the Appellate Court err in holding that the defendant was entitled to an instruction on criminally negligent homicide as a lesser included offense?"

Although the facts that the jury could reasonably have found are set forth in *State* v. *Hall,* supra, we summarize those pertinent to the issues in this appeal. On January 27, 1981, at approximately 10 p.m., the defendant entered the VIP Lounge on Albany Avenue in Hartford. Soon thereafter he engaged in an argument with another patron in the bar, James Robinson. The argument escalated into a physical confrontation and eventually moved from inside the bar to the sidewalk in front of the bar. Almost immediately after the fight had moved outside, the defendant fired six rapid-fire gunshots into Robinson. No evidence was presented as to which of the shots were the fatal ones.

The defendant testified in his defense and narrated his version of the events that had occurred before, during, and after the shooting. He admitted that he had shot the victim several times from a distance of two to three feet, but claimed that he had done so in self-defense. According to the defendant, he and Robinson had been at an illegal gambling game across the street from the VIP Lounge prior to the shooting incident. The defendant had won money at the game, but Robinson had lost, prompting Robinson to ask the defendant for a loan. The defendant did not comply with Robinson's request, and, consequently, when the two men were later at the VIP Lounge, Robinson provoked an argument. The argument escalated into a physical confrontation when Robinson jumped on the defendant and cut him with a knife. The two men then fought their way to the exterior doors of the bar through which Robinson exited. The defendant followed Robinson outside and immediately realized that Robinson was pointing a gun at him. The defendant, having witnessed Robinson's violent tendencies on a prior occasion, testified that he was fearful for his life. Thus, in an effort to protect himself, he quickly pulled out his gun and started firing.

## I

The first issue presented by this appeal is whether the Appellate Court erred in concluding that the trial court's refusal to instruct the jury that self-defense was an applicable defense to manslaughter in the second degree; General Statutes § 53a-56;[4] constituted reversible error. The trial court instructed the jury on the charged offense of murder and on the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree. The trial court also charged the jury on the law of self-defense; General Statutes § 53a-19;[5] but specifically instructed, contrary

[4] "[General Statutes] Sec. 53a-56. MANSLAUGHTER IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[5] "[General Statutes] Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other

to the defendant's timely request to charge, that self-defense was applicable only to murder and manslaughter in the first degree and was not to be considered with respect to manslaughter in the second degree. The Appellate Court determined that the trial court's instruction constituted reversible error. *State* v. *Hall*, supra, 510–15. The state argues that the holding of the Appellate Court is erroneous in that: (1) the definitions of self-defense and manslaughter in the second degree are mutually incompatible, thus the trial court's instruction was not error; or in the alternative that (2) even if the instruction was error, it was harmless in nature. We are persuaded by the latter argument.

## A

The state first claims error in the Appellate Court's conclusion that the defendant was entitled to a jury instruction on self-defense with respect to the lesser included offense of manslaughter in the second degree. The state bases its claim on the contention that the definitions of self-defense and manslaughter in the second degree are mutually incompatible, i.e., if the state proves the elements of manslaughter in the second degree beyond a reasonable doubt, it will necessarily have negated the defense of self-defense. Accordingly, the state argues, a trial court need only instruct the jury as to the elements of manslaughter in the second degree and may omit any specific reference to the theory of self-defense. We do not agree.

The Appellate Court focused on the "difficulty a jury has in weighing the justifiability of risk and action inherent in the crime of manslaughter in the second degree and the concept of self-defense" in resolving

person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

the claim now before us: "[I]n matters involving such esoteric concepts, the jury should have the benefit of as much information and instruction as will aid them in arriving at a just verdict. . . . We conclude, therefore, that the trial court should have instructed the jury on self-defense with respect to the lesser included offense of manslaughter in the second degree."[6] Id., 512.

We agree with the Appellate Court that, where the evidence warrants, the trial court must instruct the jury on self-defense in cases involving the charge of manslaughter in the second degree. We find further support for our holding in an important distinction between self-defense and manslaughter in the second degree. The statutory definitions of self-defense and manslaughter in the second degree reveal this distinction. General Statutes § 53a-19, in subsection (a), provides that, subject to the exceptions in subsections (b) and (c), "a person is justified in using reasonable physical force upon another person to defend himself . . . from what *he* reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which *he* reasonably believes to be necessary for such purpose . . . . " (Emphasis added.) General Statutes § 53a-56 (a) provides in pertinent part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . . " "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously dis-

---

[6] The Appellate Court relied as authority for its conclusion on two decisions of this court: *State* v. *Rodriguez,* 180 Conn. 382, 429 A.2d 919 (1980) (recognizing the jury's difficulty in determining the culpable state of mind of the defendant from among those required for various levels of homicide); and *State* v. *Fuller,* 199 Conn. 273, 506 A.2d 556 (1986) (recognizing the jury's difficulty in determining voluntariness of action required for criminal responsibility for purposes of determining the defense of duress).

regards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. *The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.*" (Emphasis added.) General Statutes § 53a-3 (13).

" '[General Statutes § 53a-19] focuses on the person . . . claiming self-defense. It focuses on what *he* reasonably believes under the circumstances and presents a question of fact.' " (Emphasis in original.) *State* v. *DeJesus,* 194 Conn. 376, 389, 481 A.2d 1277 (1984), quoting *State* v. *Corchado,* 188 Conn. 653, 663, 453 A.2d 427 (1982). Self-defense thus requires the trier of fact to measure the justifiability of the defendant's actions from a subjective perspective.[7] Manslaughter in the second degree, on the other hand, requires the trier of fact to view the justifiability of the defendant's risk and action from the objective perspective of a reasonable person. It is this distinction that allows self-defense to be an applicable defense to General Statutes § 53a-56 (a) (1). Conduct may be a "gross deviation from the standard of conduct that a reasonable person would observe in the situation"; General Statutes § 53a-3 (13); but, at the same time, may be wholly justified if the defendant's beliefs are reasonable from the perspective of that defendant. We conclude, therefore, that the defendant was entitled to a jury instruction on self-defense with respect to the lesser included offense of manslaughter in the second degree, and that the trial court's refusal to give such an instruction was error.

---

[7] "The test for the *degree of force* in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. [General Statutes §] 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." (Emphasis added.) *State* v. *DeJesus,* 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984).

## B

Having found error in the trial court's instruction, we must address the state's alternative claim that the trial court's error was harmless. "We have said that '[a] fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Bethea,* 167 Conn. 80, 83, 355 A.2d 6 (1974).' " *State* v. *Corchado,* supra, 660, quoting *State* v. *Miller,* 186 Conn. 654, 660–61, 443 A.2d 906 (1982). This fundamental constitutional right includes proper jury instructions on self-defense as defined by § 53a-19. See *State* v. *DeJesus,* supra, 388; *State* v. *Corchado,* supra; *State* v. *Miller,* supra. "The standard of review to be applied on this constitutional claim is whether ' "it is reasonably possible that the jury were misled." ' *State* v. *Corchado,* supra. ' "The charge is to be read as a whole and individual instructions are not to be judged in 'artificial isolation' from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978); *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 645 (1974)." *State* v. *Estep,* 186 Conn. 648, 652, 443 A.2d 483 (1982).' *State* v. *Maturo,* 188 Conn. 591, 599, 452 A.2d 642 (1982); see also *State* v. *Corchado,* supra, 660–61." *State* v. *DeJesus,* supra.

The majority of the Appellate Court rejected the state's claim that the trial court's refusal to instruct the jury on self-defense with respect to manslaughter in the second degree was harmless error. As authority for its holding, the Appellate Court relied on our

decision in *State* v. *Monte,* 131 Conn. 134, 137, 38 A.2d 434 (1944), in which we held that the refusal to charge on a lesser included offense cannot be held harmless merely because the defendant was convicted of a greater offense. The Appellate Court reasoned as follows: "Because it is settled that a jury should be given the entire range of possible verdicts in a case in which the evidence warrants the giving of the lesser included offenses, it follows that defenses that are supported by a reasonable construction of the evidence should be given along with those same lesser charges. We are not persuaded by the argument that, in cases in which the defendant is convicted of the greater offense, the failure to give warranted instructions on the lesser included offenses is not harmless, while the failure to give similarly warranted instructions on corresponding defenses is harmless." *State* v. *Hall,* supra, 514–15. Judge Stoughton dissented with respect to the majority's resolution of this issue. Id., 523–24. We embrace the view expressed in his dissent and hold that *Monte* does not compel the conclusion that, under the facts here presented, the trial court's failure to instruct the jury on self-defense with respect to manslaughter in the second degree was harmful error.

This court in *State* v. *Monte,* supra, 136, recognized that jury verdicts are often the product of "open-minded discussion and an honest weighing of the opinion of others." Consequently, we held that a trial court's failure to instruct the jury on warranted lesser included offenses cannot be held harmless merely because the defendant was convicted of a greater offense: "[T]he situation presented where the alternative is between finding a defendant guilty as charged or not guilty may be quite different from one where, under the charge of the court, they have the further choice of finding him guilty of some lesser offense embraced within the information. From the standpoint of the actual process by

which juries arrive at verdicts, a failure to submit to them the lesser offense as a permissible basis for their verdict may work a very serious harm to the defendant." Id., 136–37. Under the facts here presented, the trial court's failure to give a warranted self-defense instruction to a lesser included offense does not involve the harm sought to be avoided by *Monte*.

The trial court instructed the jury on the charged offense of murder as well as the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree. The trial court's instruction on self-defense, while limiting the applicability of that defense, did not eliminate the jury's consideration of it. Rather, the jury was fully instructed on the law of self-defense with respect to murder and manslaughter in the first degree, and was told: "If you find that the defendant acted in self-defense, it is a complete justification for his conduct and you will find him not guilty." Thus, the jury's verdict of guilty on the offense of manslaughter in the first degree was necessarily a rejection of the defense of self-defense. Since the elements of self-defense as applied to manslaughter in the second degree would have been the same as those applied to manslaughter in the first degree, the defendant would not have benefited by an instruction that the defense was applicable to manslaughter in the second degree. The court's instructions did not interfere with "the effort of [the] jury to reach a verdict with which each member [could] conscientiously agree." Id., 136. Accordingly, we hold that it is not reasonably possible that the jury was misled by the trial court's failure to instruct the jurors that they might consider self-defense with respect to manslaughter in the second degree.

## II

We now turn to the question of whether the Appellate Court was correct in concluding that the trial

court's denial of the defendant's request to charge the jury on the lesser included offense of criminally negligent homicide; General Statutes § 53a- 58;[8] constituted error. The defendant timely filed his request to charge prior to closing arguments, and took an exception when the charge was not given.

" 'In *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), this court articulated a four pronged test for determining when it is proper to charge a jury with respect to a lesser included offense. "A defendant is entitled to an instruction on a lesser offense if, and only if . . . (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." ' *State* v. *Manley,* 195 Conn. 567, 574, 489 A.2d 1024 (1985), quoting *State* v. *Vass,* 191 Conn. 604, 616-17, 469 A.2d 767 (1983); *State* v. *McIntosh,* 199 Conn. 155, 158, 506 A.2d 104 (1986)." *State* v. *Ostroski,* 201 Conn. 534, 556–57, 518 A.2d 915 (1986).

The Appellate Court concluded that the defendant had established all four prongs of *Whistnant* and, thus, that the trial court had erred in refusing to instruct the jury on the lesser included offense of criminally negligent homicide. *State* v. *Hall,* supra, 519–23. The

[8] General Statutes § 53a-58 (a) provides: "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle."

state argues that the Appellate Court's holding is erroneous in that the defendant failed to meet even the first prong of *State* v. *Whistnant*.[9] We agree.

The first prong of *Whistnant* requires that the defendant request "an appropriate instruction." A proposed instruction on a lesser included offense, like any other proposed jury instruction, is not appropriate unless made in compliance with Practice Book § 854 (formerly § 852). See *State* v. *Ostroski,* supra, 556–58; *State* v. *McIntosh,* supra. Section 854 requires, inter alia, that a request to charge set forth "the evidence to which the proposition would apply." We have held that, in the context of a written request to charge on a lesser included offense, this requirement of § 854 is met only if the proposed request contains " 'such a complete statement of the essential facts as would have justified the court in charging in the form requested.' *Michaud* v. *Gagne,* 155 Conn. 406, 410, 232 A.2d 326 (1967), quoting *Dwyer* v. *Connecticut Co.,* 103 Conn. 678, 680, 131 A. 838 (1925)." *State* v. *Killenger,* 193 Conn. 48, 57, 475 A.2d 276 (1984); see also *State* v. *Ostroski,* supra, 558; *State* v. *McIntosh,* supra, 160.

The defendant's written request to charge made only one reference to the facts: "The situation referred to in this case is only the situation commencing with the fight inside the VIP Lounge between Mr. Hall and Mr. Robinson and ending with the shots outside the VIP Lounge." The Appellate Court concluded that this statement "drew the trial court's attention to the crucial, relevant factual scenario so that the court could justifiably have given the requested instruction." *State* v. *Hall,* supra, 521. We do not agree. A mere general

[9] The state also argues that the defendant has failed to meet the third prong of *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). Because we hold that the defendant failed to request an appropriate instruction, we need not address this claim.

statement of the entire incident at issue does not comply with our rules of practice.

General Statutes § 53a-58 provides in pertinent part that "[a] person is guilty of criminally negligent homicide when, *with criminal negligence,* he causes the death of another person." (Emphasis added.) "A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists." General Statutes § 53a-3 (14). The defendant's request to charge does not enumerate the essential facts that would have justified the court's instruction to the jury pertaining to the defendant's failure to "perceive a substantial and unjustifiable risk" of the victim's death. Absent such facts, the defendant's request to charge merely refers to a fatal shooting and is as applicable to the offenses of murder, manslaughter in the first degree, and manslaughter in the second degree as to criminally negligent homicide.

The defendant conceded at oral argument that the written request to charge did not set forth facts that related specifically to the offense of criminally negligent homicide, but contended that he was nevertheless entitled to the requested instruction. The defendant argued that, since he had testified at trial that he had intended only to wound the victim, he had presented the necessary facts to justify an instruction on criminally negligent homicide. We have rejected such a claim in the past and have stated that "a trial court [does not have] an independent obligation ' "to instruct, sua sponte, on general principles of law relevant to all issues raised in evidence." ' " *State* v. *McIntosh,* supra, 160, quoting *State* v. *Preyer,* 198 Conn. 190, 198 n.9, 502 A.2d 858 (1985).

"While this court does not favor unyielding adherence to 'rules of procedure where the interests of justice are thereby disserved'; [*State* v. *McIntosh,* supra, 160]; the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. 'The minor burden of cooperation imposed by [Practice Book § 854] is neither unreasonable nor novel.' Id., 161." *State* v. *Ostroski,* supra, 559. The defendant's proposed request did not contain, as our rules of practice and our case law require, "a complete statement of the essential facts as would have justified the court in charging in the form requested." *Dwyer* v. *Connecticut Co.,* supra, 680. Accordingly, the trial court did not err in refusing the defendant's request to instruct the jury on the offense of criminally negligent homicide.

We reverse the judgment of the Appellate Court and remand the case to that court with direction to reinstate the judgment of the trial court.

In this opinion the other justices concurred.