******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., concurring in part and dissenting in part. I agree with part II of the majority opinion, which vacates the conviction of the defendant, Robert J. Williams, for criminal possession of ammunition in violation of General Statutes (Rev. to 2017) § 53a-217 (a) (1). I disagree with and respectfully dissent from part I of the majority opinion, however, which reverses the defendant's conviction of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a) and remands the case for a new trial on that charge. In my view, based on a proper construction of our self-defense and reckless manslaughter statutes, General Statutes §§ 53a-19 (a) and 53a-55 (a) (3), respectively, the trial court correctly declined to instruct the jury that the state had the burden of disproving, beyond a reasonable doubt, the defendant's justification of self-defense as to the first degree manslaughter charge. I would therefore affirm the trial court's judgment on that count.

I

Part I of the majority opinion addresses what it describes as a "novel" question of state law: "whether a self-defense instruction, when the evidence warrants, is available to a defendant charged with reckless manslaughter in the first degree with a firearm of an individual who is not the aggressor."[1] Text accompanying footnote 5 of

---

[1] Throughout its opinion, the majority consistently uses the term "aggressor" to characterize the actor § 53a-19 (a) identifies as "[the] person . . . (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." I will use the precise, but admittedly wordier, language found in § 53a-19 (a), rather than the term "aggressor" for several reasons. First, I believe that General Statutes § 1-2z calls on us to determine our state's legislative policy based on the language of our statutes, rather than on judicial characterizations of that language. Second, the word "aggressor" is expressly used elsewhere in our self-defense statute, but not in § 53a-19 (a). Specifically, § 53a-19 (b) provides that "a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating . . . and was not the *initial aggressor* . . . ." (Emphasis added.) Third, our case law has developed the meaning of "initial aggressor"

the majority opinion. The majority concludes that the instruction is available to the defendant in the present case. Given that Connecticut has operated under the Penal Code since 1969, what is equally novel—indeed, remarkable—in my view, is that the majority resolves this question principally by adopting a policy accepted by only a minority of courts in other states, rather than by examining our own criminal statutes. The majority's grudging statutory analysis begins and ends below the line, concluding that, although § 53a-19 (a) requires that "the defendant is using physical force against the assailant, it does not require that the resulting harm be inflicted on the assailant." The majority justifies the short shrift it affords our statutes by reasoning that "the parties do not frame this issue as one of statutory interpretation." Left unacknowledged by the majority is that the trial court absolutely framed this issue as one of statutory interpretation in its oral decision. In particular, the trial court referred to Connecticut case law as cutting against requiring a jury instruction on the statutory justification of self-defense when the defendant is alleged to have recklessly caused the death of someone other than a person who is "using or about to use deadly physical force" or "inflicting or about to

in § 53a-19 (b), providing all the more reason for us to stay within the explicit boundaries of the language of § 53a-19 (a). See, e.g., *State* v. *Whitford*, 260 Conn. 610, 623, 799 A.2d 1034 (2002); *State* v. *Jimenez*, 228 Conn. 335, 340–42, 636 A.2d 782 (1994). Finally, whether Kenny Martin or the defendant was, in fact, the "initial aggressor" was an issue for the jury to decide. Even if it were appropriate to use the word "aggressor" in interpreting § 53a-19, the state's argument was that the defendant was the initial aggressor, meaning that the jury already understood what that term meant in the context of the trial. Similarly, § 53a-19 does not refer to a "bystander" or "innocent bystander," or to a "third person" or "third party," except when specifically noted. See footnote 11 of this opinion. These are the majority's own descriptors, illustrating further that the majority is not undertaking a serious statutory analysis. In my view, therefore, referencing Terry Smith as an innocent bystander confuses the issue in this case. The state's charge of reckless manslaughter and the statutes implicated do not concern themselves with an "aggressor" or a "bystander." We should not either.

inflict great bodily harm." General Statutes § 53a-19 (a); see *State* v. *Courchesne*, 296 Conn. 622, 671–73, 998 A.2d 1 (2010); *Morris* v. *Platt*, 32 Conn. 75, 77–78 (1864). Then, taking into account General Statutes § 53a-4, which provides that the Penal Code "shall not be construed as precluding any court from recognizing other principles of criminal liability or other defenses not inconsistent with such provisions," the trial court went on to determine that, "although Connecticut does not have a specific provision that addresses this issue, there is nothing inconsistent in Connecticut law with the provision I'm relying upon that there is an exception to self-defense for reckless criminal conduct." The court explained that its interpretation was both compatible with § 53a-19 (a) and warranted based on our statutes and case law: "I would agree that self-defense might apply if the defendant were defending himself not only against the person shooting at him but against the third party. But there is no evidence in this case [that] the third party, Terry Smith, threatened the defendant in any way." Therefore, I cannot claim that the statutory construction I embark on in this concurring and dissenting opinion is entirely my own original thinking. Rather, my analysis tracks and lands in full agreement with that of the trial court.[2]

---

[2] The majority's assertion that it is proper to disregard our statutes because the parties have not briefed a statutory argument is supremely ironic. The majority's rationale bears little resemblance to the way that the parties have briefed the issue, which primarily addressed whether and how the doctrine of transferred intent informs the defendant's justification of self-defense. Moreover, even as the majority now frames it, the question of whether an instruction that places the burden of disproving self-defense beyond a reasonable doubt on the state is available to the defendant in this case either is, or is not, a statutory question. If it is, as I believe, and the majority does not believe that the parties' briefing is sufficient for it to decide the issue as a matter of statutory construction, it should have ordered supplemental briefing. See, e.g., *State* v. *Stephenson*, 337 Conn. 643, 652, 255 A.3d 865 (2020). Because the majority has decided the issue in the present case without undertaking any serious statutory analysis, it is difficult to fathom how this court will ever entertain—or have the opportunity to entertain—the issue as a statutory matter in another case.

The majority nevertheless maintains that the self-defense policy that it enacts in this case represents a logical extension of this court's decision in *State* v. *Hall*, 213 Conn. 579, 585–86, 569 A.2d 534 (1990). But whatever the logic of our decision in *Hall*, which, notably, derives almost entirely from a construction of our statutes, the majority fails to contend convincingly with the key factual difference between that case and the present case: *Hall* did not involve the death of an individual other than the person against whom the defendant alleges he was using reasonable force (in the majority's parlance, an innocent bystander). In my view, we can—and should—resolve the question posed by this fact pattern by examining our own statutes, just as *Hall* did. By doing so, it becomes clear that, in this state, as in a majority of jurisdictions, a defendant charged with reckless manslaughter resulting in the death of an individual other than a person who is "using or about to use deadly physical force" or "inflicting or about to inflict great bodily harm"; General Statutes § 53a-19 (a) (3); should not benefit from the statutory justification of self-defense. See 2 W. LaFave, Substantive Criminal Law (3d Ed. 2018) § 10.4 (g), pp. 217–18 n.97 (identifying as "[c]ontra" majority rule stated in *Commonwealth* v. *Fowlin*, 551 Pa. 414, 710 A.2d 1130 (1998), which majority in present case principally relies on for support); see also A.L.I., Model Penal Code and Commentaries (1985) § 3.09 (3), p. 147 (Model Penal Code and Commentaries).

II

Before delving into my statutory analysis, it is worth defining the stakes of my disagreement with the majority because, though significant, they are not as complicated as the majority makes them out to be. Specifically, the majority concludes that the state bears the burden of disproving the justification of self-defense beyond a reasonable doubt, if the evidence warrants, even when

a defendant is charged with recklessly, rather than intentionally, causing the death of someone other than the person he reasonably believes is "using or about to use deadly physical force" or "inflicting or about to inflict great bodily harm," in this case, Smith, who was not shooting at the defendant. General Statutes § 53a-19 (a). I conclude to the contrary that, as is the case in a majority of jurisdictions, our statutes do not require, under these circumstances, that the state carry that burden. *That's it.* Whether the state has this burden is the extent of what is at stake.

My conclusion that the state does not need to disprove self-defense beyond a reasonable doubt under these circumstances does not mean, however, that I believe that a defendant charged with reckless manslaughter cannot argue that he was not "evincing an extreme indifference to human life" or was not acting recklessly but was instead defending himself. Indeed, defense counsel argued precisely that,[3] and the trial court then instructed the jury precisely so.[4] My conclusion also does not foreclose a defendant from requesting

[3] Defense counsel argued in closing: "Did my client act recklessly? I submit to you that he acted reasonably in light of the circumstances. He was presented with the situation where a gun was pulled and a shot was fired. He returned fire. Nobody likes the fact that [Smith] got killed in this process, but that's on Kenny Martin. What [the defendant] did was reasonable. What he did was necessary. He chose to save his own life rather than get slaughtered in the street by . . . Martin."

[4] On the reckless manslaughter charge, the trial court instructed the jury to consider "whether [the defendant] had a valid claim to self-defense and whether he exercised self-defense reasonably or whether he exercised it recklessly," although it cautioned the jury that "the state does not need to disprove self-defense beyond a reasonable doubt to convict on this count [of reckless manslaughter]." This is consistent with the trial court's decision, in which it explained: "I do agree, however, that the defendant can argue that self-defense was one of the circumstances that the defendant confronted in determining whether the defendant acted with extreme indifference to human life under all of the circumstances. But I just am not going so far as to say that the state has to disprove self-defense for the manslaughter charge."

a particular instruction, to provide the jury with "as much information as possible" regarding self-defense to aid it in arriving at " 'a just verdict,' " as the majority states. The defendant in the present case could have asked for an additional instruction, if he thought it was necessary for the trial court to explain the concept of self-defense further in the context of a reckless manslaughter charge. As with any other request to charge, he could have claimed error on appeal if the trial court had declined to issue the instruction.[5] But that's not what the majority's disagreement with me concerns. Rather, it concerns *only* whether the state bears the burden of disproving beyond a reasonable doubt that the defendant acted reasonably in self-defense. Therefore, the majority's implication that my position deprives the jury of "a complete and thorough explanation of these concepts [of self-defense]" is pure distraction. Footnote 9 of the majority opinion. It is simply unclear to me what is so " 'esoteric' " about the state's not needing to disprove self-defense—which, I must repeat, is the only limitation under my rationale—and the majority has not expounded on any complexities inherent in the justification of self-defense that would suggest otherwise. Id.

## III

In a few scattered footnotes, notably devoid of the familiar statutory analysis that this court routinely employs; see General Statutes § 1-2z; the majority concludes that our self-defense statute, § 53a-19 (a), covers the defendant's alleged circumstances in this case because, although a defendant must exercise self-defense against the person whom he reasonably believes is "using or about to use deadly physical force" or "inflicting or

[5] The defendant in this case did not request any additional instruction. Therefore, under our current law, any hypothetical claim that the trial court should have provided him a more informative instruction on self-defense was waived under *State* v. *Kitchens*, 299 Conn. 447, 468–73, 10 A.3d 942 (2011).

about to inflict great bodily harm," the majority contends that the statute does not consider on *whom* the defendant's reasonable force lands, only that the force that the defendant used was reasonable. To arrive at this conclusion, the majority considers secondary sources and decisions from other jurisdictions that assess the meaning of the justification of self-defense, notwithstanding that these sources neither comport with our statutory language nor represent the majority rule nationally, unlike the trial court's and my own analysis, which align with that of both a majority of jurisdictions and the Model Penal Code, after which our Penal Code is modeled. See, e.g., *State* v. *Courchesne*, supra, 296 Conn. 671 (courts consider Model Penal Code when statute's plain language does not resolve question of statutory interpretation because Penal Code drafters "heavily relied" on Model Penal Code). The majority also asserts that the rationale of *State* v. *Hall*, supra, 213 Conn. 586, mandates that the state must disprove the justification of self-defense beyond a reasonable doubt and must extend that justification to the defendant in the present case, who the state alleges to have "recklessly engage[d] in conduct [that] created a grave risk of death to another person, and thereby caused the death of another person by use of a firearm, that person being . . . Smith."

Neither the majority's statutory analysis nor its interpretation of *Hall* is persuasive, in my view. Therefore, first, I detail what I believe to be a more reasonable construction and application of § 53a-19 (a) to the present case, employing principles of § 1-2z, which the majority neither references nor applies in part I of its opinion. I conclude that our state law does not require the prosecution to disprove that the defendant was justified in causing the death of a person who the defendant did not reasonably believe was "using or about to use deadly physical force" or "inflicting or about to

inflict great bodily harm" and, in fact, that § 53a-19 (a) contemplates the involvement of only two individuals: the defendant and the person against whom he reasonably believed self-defense was necessary. Thus, the defendant in this case had no legal entitlement to a jury instruction on the statutory justification of self-defense[6] because he could not have reasonably believed that he needed to employ "deadly physical force" to defend himself against Smith, as opposed to Kenny Martin, when it was Martin who the defendant purported to have reasonably believed was "using or about to use deadly physical force" or "inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a). Second, I demonstrate that *Hall* is inapposite to the present case and perhaps best understood as requiring a jury instruction that the state need not disprove self-defense. In *Hall*, the defendant claimed self-defense against the person who he reasonably believed was "using or about to use deadly physical force" or "inflicting or about to inflict great bodily harm," which is unlike the defendant's killing of Smith while the defendant was purporting to act in self-defense against Martin. Cf. *State* v. *Hall*, supra, 213 Conn. 582.

A

My analysis of the defendant's claim that he was entitled to a jury instruction that burdens the state with having to disprove beyond a reasonable doubt that the defendant had acted reasonably in self-defense in response to Martin's use of force but, instead, killed

---

[6] It is the defendant who bears the burden of establishing a legal entitlement to raise any statutory defense. *State* v. *Small*, 242 Conn. 93, 104, 700 A.2d 617 (1997) ("a defendant who has produced evidence supporting a *legally recognized defense* is entitled, as a matter of law, to a theory of defense instruction" (emphasis added)); *State* v. *Rosado*, 178 Conn. 704, 708, 425 A.2d 108 (1979) ("only when evidence indicating the *availability* of [the] legally recognized defenses is placed before a jury is a defendant *entitled as a matter of law* to a theory of defense instruction" (emphasis altered)).

Smith, begins as the majority's analysis does not, with the text of the particular justification statutes at stake in the present case, because, pursuant to § 1-2z, it is our own statutes in the first instance that embody the state's public policy. See *State* v. *Rupar*, 293 Conn. 489, 511, 978 A.2d 502 (2009). General Statutes § 53a-16[7] provides in relevant part that, "[i]n any prosecution for an offense, justification, *as defined in sections 53a-17 to 53a-23*, inclusive, shall be a defense. . . ." (Emphasis added.) It is not so simple, therefore, as the majority suggests, to say that a defendant may raise self-defense in " 'any prosecution . . . .' " (Emphasis omitted.) Footnote 7 of the majority opinion. Rather, it is only true that in "any prosecution," justification (including self-defense) "*as defined in*" our justification statutes, "shall be a defense." (Emphasis added.) General Statutes § 53a-16. The particular justification statute—self-defense—that the defendant[8] and the majority rely on

---

[7] Although the legislature has amended § 53a-16 since the events at issue in this case; see Public Acts 2019, No. 19-27, § 2; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, I refer to the current revision of § 53a-16.

[8] Alternatively, the defendant relies on the common-law defense of necessity. Although the majority does not need to reach this issue, I believe that the trial court properly declined to charge the jury on this defense as well. This court has remarked that "the defense of necessity, or choice of evils, traditionally cover[s] the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." (Internal quotation marks omitted.) *In re Juvenile Appeal (Docket No. 9268)*, 184 Conn. 157, 163, 439 A.2d 958 (1981). For example, in *State* v. *Varszegi*, 236 Conn. 266, 673 A.2d 90 (1996), this court noted that the defense of necessity in the context of prison escapes required some external, natural force: "In 1 Hale P.C. 611 (1736), it was written that if a prison caught fire and a prisoner departed to save his life, the necessity to save his life excuseth the felony." (Internal quotation marks omitted.) *State* v. *Varszegi*, supra, 282. Under this traditional framework, the facts of the present case do not present a natural physical force beyond the defendant's control.

The Appellate Court has adopted a three-pronged test to determine whether a defendant is entitled to a necessity defense instruction, requiring (1) that no legal alternative was available, (2) the harm to be prevented was imminent, and (3) that a direct causal relationship may be reasonably anticipated to exist between the defendant's action and the avoidance of

is found in § 53a-19 (a), which provides in relevant part that "a person is justified in using reasonable physical force *upon another person* to defend himself or a third person from what he reasonably believes to be the use of imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; *except that deadly physical force* may not be used unless the actor reasonably believes that *such other person* is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." (Emphasis added.)

The text of § 53a-19 (a) contains two clauses: one before the semicolon (justifying reasonable physical force), and the other after the semicolon (limiting the use of deadly physical force). If the victim in this case, Smith, had not been the victim of deadly physical force, the first clause, read in isolation, might be construed to justify the defendant's use of "physical force" on Smith at a time when the defendant was defending himself against the imminent use of *any* force being used against him, including force by a third person, to use the majority's parlance, such as Martin. But the defendant undoubtedly exercised deadly physical force against Smith, and the state alleges that he did so recklessly. Therefore, if the defendant is entitled to argue self-defense pursuant to § 53a-19 (a), complete with

harm. See *State* v. *Marsala*, 59 Conn. App. 135, 142, 755 A.2d 965, cert. denied, 254 Conn. 948, 762 A.2d 905 (2000). However, even within that framework, the defense of necessity still must "[deal] with obvious and generally recognized harms, not with those which are debatable and, indeed, the subject of legislation and government regulation." (Internal quotation marks omitted.) *State* v. *Morales*, 172 Conn. App. 329, 348, 160 A.3d 383, cert. denied, 327 Conn. 988, 175 A.3d 1244 (2017). In the present case, even under the Appellate Court's framework, the defendant's necessity claim fails because it was identical to his self-defense claim. The defendant cannot benefit from both necessity *and* self-defense under the same theory, considering that the defense of self-defense is codified into law and is therefore the "subject of legislation and government regulation." (Internal quotation marks omitted.) Id.

an instruction that places the burden on the state to disprove his defense,[9] he, and the majority, must pay particular heed to the statute's second clause, which concerns the use of "deadly physical force," as opposed to merely "physical force," which the statute's first clause controls. Once "deadly physical force" is implicated, the plain meaning of § 53a-19 (a) is that "a person" is justified in using deadly physical force "upon another person" only if he "reasonably believes that *such other person* is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." (Emphasis added.) General Statutes § 53a-19 (a). In the context of the deadly physical force that the defendant used in this case, "a person" refers to the defendant, whereas "another person" and "such other person" both refer to Martin—meaning, therefore, that, at least when it comes to deadly force, § 53a-19 (a) refers to two individuals only,[10] the defendant and

---

[9] That the state has the burden to disprove a defense under § 53a-19 (a) is, it should be noted, a creature of statute. See General Statutes § 53a-12 (a) ("[w]hen a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt").

[10] This is in contrast to another justification statute not implicated in the present case that does consider more than two individuals based on its plain text. See General Statutes § 53a-22 (c) (1) ("a peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles is justified in using deadly physical force upon another person for the purposes specified in subsection (b) of this section only when his or her actions are objectively reasonable under the given circumstances at that time, and . . . (B) He or she . . . (ii) reasonably believes that the force employed creates no unreasonable risk of injury to a third party").

Notably, at the time of Smith's homicide, General Statutes (Rev. to 2017) § 53a-22 (c) did not consider a third party in the manner it does now but, rather, provided that a designated and authorized official "is justified in using deadly physical force upon another person for the purposes specified in subsection (b) of this section only when he or she reasonably believes such to be necessary to: (1) Defend himself or herself or a third person from the use or imminent use of deadly physical force; or (2) effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes has committed or attempted to commit a felony which involved the infliction or threatened infliction of serious physical injury and

the person against whom he reasonably believed self-defense was necessary.[11]

Where does that leave the defendant in the present case? Considering that the defendant has the burden of producing sufficient factual evidence at trial to establish his entitlement to the instruction; see, e.g., *State* v. *Revels*, 313 Conn. 762, 778, 99 A.3d 1130 (2014) (defendant is required to produce evidence at trial that warrants self-defense jury instruction), cert. denied, 574 U.S. 1177, 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015); and, applying the plain language of § 53a-19 (a), the defendant therefore had to produce evidence of one of two possible scenarios: (1) that he was justified in using deadly physical force against Martin because he reasonably believed that Martin was about to use deadly physical force or to inflict great bodily harm, or (2) that he was justified in using deadly physical force against Smith because he reasonably believed that Smith was about to use deadly physical force or to inflict great bodily harm. The facts of the present case do not fit within either scenario. Instead, the defendant sought to justify, pursuant to § 53a-19 (a), his use of deadly force against *Smith* because he claimed that he reasonably believed that *Martin* was about to use deadly physical force or to inflict great bodily harm on him. This is simply not a scenario that our justification statute contemplates. In fact, it is fair to say that it is the

if, where feasible, he or she has given warning of his or her intent to use deadly physical force.”

The fact that the legislature changed the language of § 53a-22 (c) to consider the impact of force on a third party with respect to liability bolsters my conclusion that the absence of such language in § 53a-19 (a) was a legislative choice to which this court must defer.

[11] The “third person” referred to in the first clause of the self-defense statute, § 53a-19 (a), is not a person *against* whom a defendant uses force, such as either Smith or Martin. Rather, the statute permits a defendant to use self-defense to defend not just himself, but to defend a third person from the use of force. The defendant does not argue that he was trying to *protect* Smith but, instead, caused Smith's death.

majority, not the state, that seeks to "carve out an exception to the applicability of the justification of self-defense when a bystander is accidentally killed rather than the initial aggressor" and to "adopt an exception when the legislature has not done so." Footnote 7 of the majority opinion.

The majority avoids squarely confronting my reading of the statute, or offering another option, instead hurriedly concluding that "§ 53a-19 does not expressly preclude the application of self-defense in the third-person context . . . . Although the statute requires that the defense be available only if the defendant is using physical force against the assailant, it does not require that the resulting harm be inflicted on the assailant." (Citation omitted.) Id. I disagree. I believe that, fairly read, the statute *does* preclude the application of self-defense "in the third-person context" and *does* require that the resulting harm that the defendant in this case seeks to justify be inflicted on Martin, the person who the defendant reasonably believed would exercise deadly physical force against him.[12] Section 53a-19 (a) expressly

---

[12] If I am correct that our self-defense statute contemplates the involvement of only two individuals—the defendant and the person against whom he exercises deadly force—it is fair then to ask how defendants, including the defendant in the present case, can properly benefit from a self-defense instruction when facing criminal charges such as murder or assault that result in the death or injury of individuals other than an aggressor. The doctrine of transferred intent squarely addresses this question. For those crimes that contemplate an innocent third person victim, such as in our murder statute; see *State* v. *Hinton*, 227 Conn. 301, 309, 630 A.2d 593 (1993); and involve an intentional mental state, therefore aligning with the traditionally intentional aspect of self-defense; see *State* v. *Singleton*, supra, 292 Conn. 753 n.14; the innocent third individual to whom the defendant's intent transfers also takes the place of the aggressor within the meaning of the self-defense statute. See 1 W. LaFave, supra, § 6.4 (d), pp. 648–49 ("There are, of course, some situations where, though *A* intentionally kills or injures *B*, *A* is not guilty of murder or battery . . . [if] he is privileged to kill or injure *B* in self-defense . . . . Now suppose *A* shoots at *B* under these circumstances but, missing *B*, hits and kills or injures *C*, an innocent bystander. If *A* aims at his attacker *B* in proper self-defense, but hits *C* instead, he is not generally guilty of murder or battery of *C*. Once again, *he*

justifies a defendant's use of deadly physical force "*upon* another person," but "another person" refers to the same person referenced later in that subsection as "such other person . . . ." (Emphasis added.) The only way that the defendant in the present case could be justified in using deadly physical force "upon another person" (i.e., Martin) is if that force landed "upon" "such other person" (also Martin). But because the defendant's use of deadly physical force caused the death of Smith, not Martin, the defendant's statutory self-defense claim could succeed only if § 53a-19 (a) contemplates the involvement of someone other than the defendant and the person who he reasonably believed would use "deadly physical force" or "inflict great bodily harm." As I have detailed, under the statute's plain language, that is not the case.

The majority also contends that our state's common law supports its conclusion that the statutory justification of self-defense can apply to a reckless manslaughter charge even when the defendant's use of deadly physical force causes the death of someone other than the person who the defendant reasonably believes is "using or about to use deadly physical force, or . . . inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a). But the principal Connecticut case that the majority relies on does not, in fact, support its interpretation of § 53a-19 (a). To the contrary, *Morris* v. *Platt*, supra, 32 Conn. 75, which the trial court in the present case explicitly relied on in its decision, supports my interpretation of § 53a-19 (a). In particular, *Morris* states that a defendant may still be liable for a criminal act that harms someone other than the person against whom he reasonably believed self-defense was necessary if that act was done recklessly. See id., 83–87 ("[N]o man is liable in a civil suit or criminal prosecution for

---

*is only as guilty as to C as he would have been had his aim been accurate enough to have hit B.*" (Emphasis added; footnotes omitted.)).

an injury lawfully committed in self-defense *upon an actual assailant. . . .* [I]f the act though strictly lawful and necessary was done with wantonness, negligence or folly, then, although the wounding was unintentional and accidental, it is conceded, and undoubtedly true; *that the defendant would be liable.*" (Citations omitted; emphasis added.)).

Although I base my conclusion largely on our state's statutes, it is no accident, in my view, that my interpretation is consistent with the rule in a majority of jurisdictions according to a leading commentator on substantive criminal law: "If *A* in proper self-defense aims at his adversary *B* but misses *B* and unintentionally strikes innocent bystander *C*, he is not liable for *C's* injury or death. *But the result is otherwise if under all the circumstances (including the need to defend himself) A was reckless with regard to C. In such a case he would be liable for battery if he merely injures, involuntary manslaughter if he kills, C.*" (Emphasis added; footnote omitted.) 2 W. LaFave, supra, § 10.4 (g), p. 217.[13] My conclusion is also consistent with the

---

[13] The majority claims that twenty-four jurisdictions recognize the principle of unintentional killing or injury to third parties during attempted self-defense, insinuating that nearly half the states in the nation are in accord with its position that a defendant charged with reckless manslaughter can benefit from a self-defense instruction after killing an individual other than the person against whom he reasonably believes self-defense was necessary. The source that the majority relies on does not support this proposition, however. See F. Tinio, Annot., "Unintentional Killing of or Injury to Third Person During Attempted Self-Defense," 55 A.L.R.3d 620 (1974); see also F. Tinio, supra, 55 A.L.R.3d 131 (Supp. 2021). The majority's twenty-four jurisdiction figure comes from the section of the annotation detailing the general view that unintentional injury to, or the death of, a third person is excusable if it is the result of self-defense. See F. Tinio, supra, 55 A.L.R.3d, § 3 [a], pp. 623–24 (1974); see also F. Tinio, supra, 55 A.L.R.3d, § 3 [a], p. 132 (Supp. 2021). The cases discussed in this section include those outside the context of reckless manslaughter, such as *People* v. *Jackson*, 390 Mich. 621, 212 N.W.2d 918 (1973), which articulates the majority rule that, although "[t]he unintended killing of an innocent bystander is not murder if justifiably committed in proper self-defense . . . [*i*]*t may, however, be manslaughter.*" (Emphasis added.) Id., 624. Another section of the annotation specifi-

Model Penal Code, which, as I have noted, this state looked to when drafting our Penal Code. In relevant part, the Model Penal Code provides that, "[w]hen the actor is justified under [s]ections 3.03 to 3.08 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those [s]ections is unavailable in a prosecution for such recklessness of negligence towards innocent persons." Model Penal Code and Commentaries, supra, § 3.09 (3), p. 147. Our case law instructs that it is appropriate to look to the Model Penal Code if the language and legislative history of a criminal statute do not resolve a question of statutory interpretation. See, e.g., *State* v. *Courchesne*, supra, 296 Conn. 671.

The majority implies that my interpretation "advance[s] no public benefit." Footnote 6 of the majority opinion. But my disagreement with the majority stems from my belief that the legislature *has* considered precisely that it is logical and benefits society to punish reckless and negligent behavior. I believe that our statutes and case law support the policy rationale of the majority of courts in other states and the Model Penal Code when it comes to the application of self-defense as to criminal liability for reckless manslaughter resulting in the death of someone such as Smith. The majority is apparently unconvinced because of what it refers to as the "incongruity that would result in recognizing transferred intent to kill when it comes to intentional murder . . . while not . . . provid[ing] the defendant with the benefit of a complete self-defense instruction for reckless manslaughter." (Citation omitted.) Id. As I have previously explained, however, the majority's reference to "a complete self-defense instruction" comes down to one issue

cally details seven (not twenty-four) jurisdictions that specifically consider when, in a prosecution for manslaughter, a defendant is acting in lawful self-defense. See F. Tinio, supra, 55 A.L.R.3d, § 4 [b], pp. 631–34 (1974).

and one issue only: whether the state has to disprove self-defense.

In my view, therefore, the trial court correctly declined to afford the defendant in the present case a jury instruction on the statutory justification of self-defense pursuant to § 53a-19 (a) considering that our state has, by statute and case law, adopted the policy of a majority of state courts and aptly described by the trial court in the present case: "[S]uch blanket authority for the use of self-defense defies logic . . . [and] is not tolerable in an organized society, and we can't write it off as just collateral damage." That policy does not include requiring that the state disprove the statutory justification of self-defense when a defendant employs deadly physical force against someone such as Smith, who the defendant could not reasonably have believed was "using or about to use deadly physical force, or . . . inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a).

B

I also take issue with the majority's determination that its conclusion is a natural extension of *State* v. *Hall*, supra, 213 Conn. 584. The majority states that, "[h]aving concluded in *Hall* that a trial court must instruct the jury on self-defense for a reckless manslaughter charge when the evidence warrants such an instruction, [it follows] . . . that the defense is available regardless of whether the victim is a bystander or the alleged aggressor." Our holding in *Hall*, however, even as the majority understands it in the present case, does not conflict with my interpretation of § 53a-19 (a) because the defendant in *Hall* had claimed self-defense against the person whom he reasonably believed self-defense was necessary. See *State* v. *Hall*, supra, 582. This differs from the defendant's killing of Smith while

purportedly acting in self-defense against Martin, a circumstance that I believe § 53a-19 (a) precludes.

Nevertheless, I disagree with the majority's understanding of *Hall* to the degree that it relies on "the subjective-objective distinction" between self-defense and recklessness in placing the burden on the state to disprove a defendant's claim of self-defense (which, as I have made clear in part II of this opinion, is all that is at stake in this case), considering that both self-defense and recklessness involve subjective and objective inquiries. See *State* v. *Hall*, supra, 213 Conn. 584–86 (self-defense statute, § 53a-19, is compatible with recklessness mental state in statute defining manslaughter in second degree because self-defense involves subjective inquiry, whereas recklessness involves objective inquiry). Given our case law on self-defense, I would posit that *Hall* is better understood as requiring the trial court to instruct the jury on a defendant's claim of self-defense for recklessness crimes, perhaps based on the language of § 53a-19 (a), but without requiring that the state disprove that claim pursuant to General Statutes § 53a-12 (a). See General Statutes § 53a-12 (a) ("[w]hen a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt"). With this understanding of *Hall*, the jury instruction it requires is more akin to the common-law defense of negation.

The majority itself appears to be uncomfortable with the "subjective-objective rationale from *Hall*," given its acknowledgment that it "appears to be in tension with our recent decision in *State* v. *Johnson*, 351 Conn. 53, 328 A.3d 143 (2025)," in which this court expressly detailed that self-defense involves both subjective and objective prongs. See id., 61. This tension is not new. This court has long made clear that self-defense and recklessness involve both subjective and objective

inquiries. See, e.g., *State* v. *Salz*, 226 Conn. 20, 33, 627 A.2d 862 (1993) (to constitute recklessness, defendant must objectively disregard risk that constituted gross deviation from reasonable standard of care and must have "subjectively realized and chose to ignore [that] substantial risk" (internal quotation marks omitted)); *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984) ("The Connecticut test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable."). In fact, we recognized in *Hall* itself that self-defense involves both a subjective and objective inquiry, citing the same language from *DeJesus* that the majority references in its opinion and that this opinion references in this very paragraph. See *State* v. *Hall*, supra, 213 Conn. 586 n.7.

I would add that *Hall* expressly states that "[i]t is *this* [*subjective-objective*] *distinction* that allows self-defense to be an applicable defense to [reckless manslaughter]." (Emphasis added.) Id., 586. Therefore, I find it increasingly difficult to decipher what the basis is for *Hall* to require the state to disprove self-defense, given the majority's insistence that, "[e]ven if we give less weight to the first [subjective-objective] ground in *Hall*, we are still persuaded that there is an inherent difficulty for a jury, comprised of lay people, 'in weighing the justifiability of risk and action inherent in the crime of [reckless] manslaughter . . . and the concept of self-defense . . . .' " This supposed "inherent difficulty" does not convince me that *Hall* requires that, under the circumstances of the present case, in which the defendant was permitted to and indeed did argue principles of self-defense and the trial court instructed the jury on those principles, the state must disprove the defendant's claim of self-defense beyond

a reasonable doubt pursuant to §§ 53a-12 (a) and 53a-19 (a). I am particularly unconvinced because, as I have explained; see part II of this opinion; nothing prevented the defendant in this case from requesting an additional instruction to provide the jury with all the " 'esoteric' " information concerning principles of self-defense that it might have needed to make an informed decision.

To be clear, I am not suggesting that we should overrule *Hall* in this case. No one has asked us to do so, and such action is unnecessary for my construction of § 53a-19 (a) to prevail. But, in my opinion, scrutinizing the law of our state reveals that *Hall* is better understood as requiring, when the evidence warrants, a self-defense instruction for crimes involving recklessness that the state need not disprove self-defense pursuant to § 53a-12 (a). The certified question in *Hall* asked whether "the Appellate Court err[ed] in concluding that the trial court should not have instructed the jury that self-defense was not available as a defense to the lesser included offense of manslaughter in the second degree . . . ." *State* v. *Hall*, supra, 213 Conn. 581 n.3. This question does not consider whether such an instruction would include mandating that the state disprove that defense, and, in fact, *Hall* never references § 53a-12 (a) or mentions the state's burden to disprove self-defense at all. Rather, the court in *Hall* disagreed with the argument that, "if the state proves the elements of manslaughter in the second degree beyond a reasonable doubt, it will necessarily have negated the defense of self-defense." Id., 584. But it does not necessarily follow from that disagreement that the defendant must be afforded a self-defense jury instruction that requires the state to disprove that defense beyond a reasonable doubt. And, although the court in *Hall* referred to § 53a-19 (a) to inform its conclusion, that conclusion was that "the defendant was entitled to a jury instruction on self-defense"; id., 586; not that the defendant was

entitled to a jury instruction on self-defense that included allocating the burden of disproving self-defense to the state pursuant to § 53a-12 (a). Therefore, *Hall*, in my view, is best understood as merely requiring *an instruction* that provides the jury with the information it needs to make an informed decision.

With this understanding of *Hall*, our case law supports interpreting the instruction required by that decision on the common-law *negation* defense of accident, rather than the statutory *justification* of self-defense. Negation is apt in this circumstance because the statutory justification of self-defense involves "the element of intent normally associated with a justification defense," which is simply incompatible with a crime committed recklessly, considering that such crimes are, by their nature, unintentional. See *State* v. *Singleton*, 292 Conn. 734, 753 n.14, 974 A.2d 679 (2009). Under the circumstances of this case, therefore, because the defendant was charged with and found guilty by a jury of a crime involving a reckless, rather than an intentional, mental state,[14] he could not act intentionally in self-defense. Instead, he could claim only that his actions were "unintentional or accidental," therefore *negating* a mental state of recklessness. Id.; see also *State* v. *Cassino*, 188 Conn. 237, 242, 449 A.2d 154 (1982) ("[w]hile proof of accident would negate an essential element of the crime charged . . . it does not constitute a justification for a crime and is distinguishable from self-defense").

---

[14] See General Statutes § 53a-3 (13) ("[a] person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation"); cf. General Statutes § 53a-3 (11) ("[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct").

The majority agrees that the defendant in the present case could not have had an intentional mental state, considering its admission that "there is no intent to transfer" because he was convicted of reckless man-slaughter. Footnote 5 of the majority opinion. The majority nevertheless concludes that the defendant is entitled to a statutory justification defense based on *Hall*'s "sub-jective-objective" distinction, which it argues "applies with equal force to the present case," even as, in the same breath, it distances itself from that distinction. In large part, the majority bases this policy conclusion on *Commonwealth* v. *Fowlin*, supra, 551 Pa. 414. But, in that case, under Pennsylvania law, self-defense *negated* the recklessness elements of the crimes with which the defendant was charged, rather than *justified* his reckless actions, therefore aligning with my interpreta-tion of *Hall*. See id., 419 ("[b]ecause the crimes with which [the defendant] was charged require proof of recklessness, and because [Pennsylvania law] holds that a claim of self-defense, if believed, negates any element of recklessness, [the defendant], a fortiori, can-not be found to have been reckless, for the [state] admits that his actions were justified"). Although the majority tries not to wholly abandon the "subjective-objective distinction" this court drew in *Hall*, it might as well have done so because, by giving that distinction "less weight," all that is left of the rationale for *Hall* is the justification that, in " 'esoteric' " matters such as self-defense, "the jury should have as much information as possible." But no one denies that the jury should have sufficient instruction, and, as I have said, those words ring hollow in this context. The defendant can ask the court to provide all the explanation he wants to try to demystify what the majority considers such an " 'eso-teric' " concept.

Whatever legal gymnastics this court must undertake to understand the underpinnings of *Hall*, it does not

excuse, in my view, the majority's failure to return to our own statutes to determine how to resolve the "novel" question that this case presents: whether the state must disprove that a defendant, charged with a crime committed recklessly, acted reasonably in self-defense against someone who was not the "person . . . using or about to use deadly physical force, or . . . inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a). Neither the majority's explanation of *Hall*, nor my answer to this question, as described in part I of this opinion, changes that it is a *statutory question.* Section 53a-19 (a) and *Hall*, properly understood, align with the trial court's refusal to put the burden on the state to disprove the defendant's self-defense claim. The trial court appropriately instructed the jury, based on the law of our state, that it may consider principles of self-defense in determining whether the defendant acted recklessly in violation of § 53a-55 (a) (3). Because I believe that the majority's conclusion inappropriately places the law and policy of other jurisdictions before that of our state and the majority continues to misinterpret how *Hall* should be best understood, I respectfully dissent.